IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SELWYN SAMUELS, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:11-CV-1124-N |
| § | |
| BBVA COMPASS BANK, NA, § | |
| § | |
| Defendant. § | |

## **ORDER**

This Order addresses Defendant BBVA Compass Bank, NA's ("Compass") motion for summary judgment [10]. The Court grants the motion.

### I. SAMUELS'S DISPUTE WITH COMPASS

Plaintiff Selwyn Samuels, an African-American male, was a Compass employee during two distinct time periods: from 2007 to 2009 and then again for a few months in 2010. Samuels's claims in this case all relate to the latter period, the first having been apparently without incident. In April 2010, Samuels began working as a teller in Compass's East Dallas branch. He was both a full-time employee and a full-time student. During the period relevant to his claims, Niki Jobe was the Branch Retail Executive, and Sheri Bowen was Assistant Manager of the East Dallas branch. Both supervised Samuels.

During Samuels's 2010 tenure at Compass, Jobe and Bowen took disciplinary action against Samuels on several occasions. Samuels received a verbal warning for wearing inappropriate attire. He also received a written warning after arriving late to work one day.

In June 2010, Jobe issued Samuels a second written warning regarding his ongoing tardiness. The second warning details seven instances in which Samuels arrived late within a fifty-day period. The same day, Bowen issued Samuels a written warning for refusing to work a shift as scheduled and being disrespectful to Bowen. Samuels testified that after these warnings he met with Jobe and complained that Bowen was discriminating against Samuels because of Samuels's race. Jobe disputes that Samuels ever reported the alleged discrimination. Samuels also requested but was denied a transfer to another Compass branch.

Also in June 2010, Samuels requested time off to take an exam scheduled for the afternoon of July 9. Bowen denied Samuels's request, telling Samuels he would need to work on July 9 or find someone to work his shift. On July 7, and again on July 8, Jobe told Samuels that she had not been able to find coverage for him on July 9, and that he would need to work as scheduled if he was unable to find a substitute.

On the morning of July 9, Samuels had discussed his intent to leave early with other employees. Upon hearing of Samuels's plan, Jobe spoke with Whitney Cahoy, a Compass human resources representative, about the situation. The evidence conflicts as to whether Jobe confronted Samuels that morning about his plan after Cahoy advised her to do so. It is undisputed, however, that Samuels, despite his inability to find a substitute, left work early on July 9 and did not return. Jobe spoke with Cahoy again, and they agreed that the proper course of action was to terminate Samuels's employment on account of his absence that afternoon and his disregard of Bowen's and Jobe's instructions to work his scheduled hours

that day.  Jobe told Samuels over the phone that evening that he had been discharged, and she later sent a memorandum to Samuels detailing the reasons for his termination.

Samuels then filed this suit, alleging violations of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000(e), *et seq.*  Specifically, Samuels asserts claims for racial discrimination, racial harassment, and retaliation.  Compass now moves for summary judgment on all of Samuels's claims.

## II. SUMMARY JUDGMENT STANDARD

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).  Courts, however, need not sift through the record in search of triable issues.  *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006).

The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact so that a reasonable jury might return a verdict in its favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Moreover, "[c]onclusory allegations, speculation, and unsubstantiated assertions" will not suffice to satisfy the nonmovant's burden.  *Douglass v. United Servs. Auto. Ass'n*,

79 F.3d 1415, 1429 (5th Cir. 1996) (en banc). Indeed, courts resolve factual controversies in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. COMPASS IS ENTITLED TO SUMMARY JUDGMENT ON ALL OF SAMUELS'S CLAIMS

#### A. Samuels's Race Discrimination Claim Fails

The *McDonnell Douglas* burden-shifting framework governs race discrimination claims under Title VII. First, a plaintiff must establish a prima facie claim for racial discrimination by showing that: (1) he is a member of a protected class; (2) he was qualified for the position at issue; (3) he was the subject of an adverse employment action; and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011) (citing *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Second, if the plaintiff is successful, the burden of production – but not the burden of proof – shifts to the defendant, who must proffer a legitimate, nondiscriminatory reason for the challenged employment action. *Lee*, 574 F.3d at 259 (5th Cir. 2009) (citing *McDonnell Douglas*, 411 U.S. at 802). Third, if the defendant articulates a legitimate, nondiscriminatory reason, the plaintiff must show that (1) the defendant's reason is not true, but is instead a pretext for

discrimination; or (2) the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (quoting *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

***1. Samuels Has Not Established a Prima Facie Case.*** – There is no dispute as to the first and third factors. Samuels, an African-American, is a member of a protected class and was qualified for his job. As to the second factor, he suffered an adverse employment action when Compass terminated his employment.[1] The remainder of the actions of which Samuels complains are not adverse employment actions for the purposes of Title VII. As the Fifth Circuit has stated, "for all Title VII claims, '[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'" *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (citing *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)) (alteration in original). Jobe's and Bowen's verbal and written disciplinary actions against Samuels for dress code violations, tardiness, and insubordination thus do not qualify as adverse employment actions because they are not ultimate employment decisions. *See, e.g.*, *Dutton v. Univ. Healthcare Sys.*, L.L.C., 136 F. App'x 596, 601 (5th Cir. 2005) (unpub.) (ruling that, in context of retaliation claim, "merely being written up by one's employer is not an adverse

---

[1] There appears to be some evidence that Compass considered Samuels's departure on July 9 to signify his resignation, but Samuels disputes that characterization. The Court resolves the dispute in favor of Samuels and finds, for the purpose of summary judgment, that Compass fired Samuels.

employment action because such conduct does not involve an employer's 'ultimate decision.'"); *Gibbons v. Leggett & Platt, Inc.*, No. 3:02-CV-0458-H, 2003 WL 21509166, at *3 (N.D. Tex. Apr. 11, 2003) ("Write-ups, or other disciplinary action falling short of discharge, are not ultimate employment actions."). For the same reason, Compass's denial of Samuels's transfer request is also not an adverse employment action under Title VII. *See, e.g.*, *Burger v. Cent. Apartment Mgmt., Inc.*, 168 F.3d 875, 879 (5th Cir. 1999) ("Refusing an employee's request for a purely lateral transfer does not qualify as an ultimate employment decision").

Samuels falls short of establishing a prima facie case because of the fourth factor. To prove he was treated less favorably than other employees not in his protected class, he must offer examples of employees who were treated better than him "under nearly identical circumstances." *Lee*, 574 F.3d at 260 (quoting *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991). This is a stringent requirement:

> The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been "nearly identical" to that of the proffered comparator who allegedly drew dissimilar employment decisions.

*Id.* at 260 (citing cases) (footnotes omitted). As explained above, the only adverse employment action at issue here is Samuels's firing for absence from work and disregard of his supervisors' express instructions. Samuels must consequently proffer comparators who engaged in actions "nearly identical" to his but who were not fired. He has not done this.

ORDER – PAGE 6

He admitted in his deposition that he is not aware of any employee leaving midshift after being told not to do so by a supervisor. Dep. of Selwyn Samuels 81:8-11 (Def.'s Summ. J. App. [11] 41 [hereinafter Def.'s App.]). He lists three employees who he believes were treated more favorably than he was, but he offers no evidence that they disregarded supervisors' instructions to work scheduled shifts or left in the middle of their shifts despite instruction not to do so. *Id.* at 80-81 (Def.'s App. 40-41). Samuels thus cannot prove that any nonblack employee situated similarly to him was treated more favorably than he. Because Samuels cannot establish the fourth factor of a prima facie case of race discrimination, his claim for race discrimination fails.

***2. Samuels Has Not Shown that Compass's Proffered Legitimate Reason for Firing Samuels Was Pretextual.*** – Even if Samuels could establish a prima facie case, his race discrimination claim would fail nonetheless. Compass asserts that it fired Samuels because of his unexcused absence on July 9, which violated his supervisors' instructions to work his scheduled hours. Samuels produces no evidence to challenge this rationale.[2] He does assert in a declaration that he emailed Jobe and Bowen on July 7 about his intent to miss work on July 9 and that Jobe and Bowen did not instruct him after he sent that email not to miss work. Decl. of Selywn Samuels 4 (Pl.'s App. in Supp. of Pl.'s Resp. 4 [hereinafter Pl.'s App.]). This statement, however, directly contradicts Samuels's deposition testimony that Jobe instructed Samuels by email on July 8 to work his scheduled shift. Samuels. Dep. 62:5-16

---

[2]Samuels also argues that he was treated dissimilarly on occasions other than his termination, but, as explained above, the only adverse employment action at issue regarding his claim for race discrimination is his termination.

(Def.'s App. 26). A party cannot "defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (citing *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 137 n.23 (5th Cir. 1992); *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984)). Because of the conflict in his testimony, Samuels cannot use his declaration to create a genuine issue of material fact sufficient to withstand summary judgment. *Cf. Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 346 (5th Cir. 2007) ("To the extent that Turner's declaration conflicts with her deposition testimony, it is not sufficient to rebut RHA's proffered nondiscriminatory reason for her dismissal."). This is especially true since the email chain in question, including Jobe's July 8 email, is part of the summary judgment record and rebuts Samuels's declaration. Def.'s App. 50-51. Moreover, Samuels readily admits that knew *before* July 7 that he had to work his scheduled shift on July 9, and he also concedes that he did not in fact do so. Samuels Dep. 58-59, 64-65 (Def.'s App. 23-25, 27-29). Thus, even if Samuels could state a prima facie discrimination case, he points to no evidence countering the legitimate rationale Compass proffers as to why it fired him.

     *3. Conclusion Regarding Samuels's Race Discrimination Claim.* – Samuels has not stated a prima facie case for race discrimination, and he has not raised a fact issue regarding whether Compass's articulated reason for firing him was pretextual. There is thus no genuine dispute about whether Samuels's termination was racially motivated, and Compass is accordingly entitled to summary judgment as to Samuels's race discrimination claim.

     *B. Samuels's Hostile Work Environment Claim Fails*

In his complaint, Samuels appears to assert that Bowen subjected him to a hostile work environment. Compass addressed this claim in its motion for summary judgment, but Samuels did not respond. It appears Samuels has abandoned this claim, but, out of an abundance of caution, the Court will address it.

To establish a hostile work environment claim under Title VII, a plaintiff must prove that (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012) *cert. denied*, No. 11-1361, 2012 WL 1657214 (U.S. Oct. 1, 2012) (quoting *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)).

In this case, Samuels's claim fails because he cannot establish the fourth element of a hostile work environment claim: the complained-of harassment did not affect a term, condition, or privilege of his employment. Harassment affects a term, condition, or privilege of employment only if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ramsey*, 286 F.3d at 268 (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993)). Courts cannot look to the incidents of alleged harassment in isolation; rather, they must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Walker v. Thompson*, 214 F.3d 615, 625 (5th Cir. 2000) (quoting *Harris*, 510

U.S. at 23). The "mere utterance of an . . . epithet which engenders offensive feelings in a employee[]" does not sufficiently affect the conditions of employment to implicate Title VII." Harris, 510 U.S. 17, 21 (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, (1986)) (internal citation omitted). Rather, Title VII bars only conduct that is both subjectively and objectively hostile. *Id.*

In this case, Samuels testified in his deposition that Bowen on a few occasions tried to be "cool" and used the phrase "fo' shizzle ma nizzle," or some variant thereof.[3] The phrase, which Bowen apparently picked up from her teenage son's music, is slang for "for sure, my nigga." RICHARD A. SPEARS, MCGRAW HILL'S DICTIONARY OF SLANG AND COLLOQUIAL EXPRESSION 125 (4th ed. 2006). Samuels testified that Bowen did not know the phrase's meaning but that, after he told her, she used it once or twice more. Samuels Dep. 74-76 (Def.'s App. 35-37). Bowen's use of the phrase, even if inappropriate and subjectively offensive to Samuels, was not objectively offensive. Bowen used the phrase on a handful of occasions at most. Though the word "nizzle" is slang for a very offensive term, Bowen's use of the word was, in context, merely offensive, as opposed to physically threatening or humiliating. And there is no evidence to suggest that Bowen's use of the phrase interfered with Samuels's work performance. Balancing these factors, the Court concludes that Bowen's actions are not sufficiently severe to implicate Title VII. *See, e.g.*, *White v. Gov't Employees Ins. Co.*, 457 F. App'x 374, 380-81 (5th Cir. 2012) (unpub.)

---

[3]The court reporter, without the benefit of reference material, transcribed the phrase as "for shizel my nizel."

(finding race-based incidents including use of terms "nigger," "ghetto," and "FEMA trailer," while "racially inappropriate," insufficient to state claim of hostile work environment); *Carter v. Luminant Power Services Co.*, No. 3:10-CV-1486-L, 2011 WL 6090700, at *29-30 (N.D. Tex. Dec. 6, 2011) (holding six incidents of race-based conduct over eighteen months, including discovery of noose in workplace, insufficient to implicate Title VII).

Samuels has not introduced evidence sufficient to raise a fact issue on a hostile work environment claim. To the extent Samuels continues to assert that claim, Compass is entitled to summary judgment.

### C. SAMUELS'S RETALIATION CLAIM FAILS BECAUSE HE HAS INSUFFICIENT PROOF OF CAUSATION

The *McDonnell Douglas* burden-shifting framework also governs retaliation claims. A plaintiff establishes a prima facie retaliation case by showing that (1) he engaged in a protected activity, (2) an adverse employment action occurred,[4] and (3) there was a causal link between the protected activity and the adverse employment action. *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008). If the plaintiff is successful in presenting a prima facie case, the burden shifts to the employer to articulate a legitimate, nonretaliatory reason for the adverse employment action. *Long v. Eastfield Coll.*, 88 F.3d

---

[4]The test for an adverse employment action in the retaliation context is broader than the test for such action in the Fifth Circuit in the discrimination context. *McCoy v. City of Shreveport*, 492 F.3d 551, 559-60 (5th Cir. 2007) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). Because Samuels's retaliation claim fails regardless of the number of adverse employment actions Compass took against him, however, the Court need not address whether more actions than Samuels's firing were adverse employment actions in the retaliation context.

300, 304-05 (5th Cir. 1996) (citing *McMillan v. Rust Coll., Inc.*, 710 F.2d 1112, 1116 (5th Cir. 1983)).  If the defendant proffers such a reason, "the fact-finder must decide whether retaliation was the but-for cause for the employer's action."  *Hernandez*, 670 F.3d at 657 (citing *Long*, 88 F.3d at 305 n.4).  This means that "a plaintiff may avoid summary judgment on 'but for' causation by demonstrating 'a conflict in substantial evidence on this ultimate issue.'"  *Id.* at 660 (citing *Long*, 88 F.3d at 308).

Samuels's ability to prove a prima facie case is questionable.  Samuels and Jobe offer differing testimony regarding whether Samuels reported to Jobe his belief that Bowen was discriminating against him because of his race.  For the purposes of this motion, the Court assumes that Samuels did report the alleged discrimination and that this action constitutes protected activity.

The salient question is whether Samuels can prove the third prong, but-for causation. The Fifth Circuit has recognized three indicia of but-for causation in the retaliation context: (1) whether the conduct in question is present in the employee's past disciplinary record, (2) whether the employer followed its typical policy and procedures in terminating the employee, and (3) the temporal relationship between the employee's conduct and his discharge.  *Nowlin v. Resolution Trust Corp.*, 33 F.3d 498, 508 (5th Cir. 1994).  First, Samuels's disciplinary record reveals that his supervisors disciplined him for both tardiness and insubordination in June 2010, several weeks before he was fired.  These violations resemble the conduct – failure to work a shift as scheduled and disregard of a superior's instructions – that Compass claims ultimately resulted in Samuels's discharge.  *Cf. Jenkins v. Orkin Exterminating Co.*,

646 F. Supp. 1274, 1277 (E.D. Tex. 1986) (finding that plaintiff made out prima facie case for retaliation where, inter alia, "his personnel record was totally void of any corrective interview or any notations about attitude problems, lateness or failure to comply with any company procedures or requirements"). Second, Samuels points to no evidence that Compass did not follow its standard policies in discharging him. Third, Samuels does point the temporal proximity between the allegedly protected activity and his discharge. Samuels asserts that he reported Bowen's alleged discrimination on June 3, a little more than a month before his discharge on July 9. In some cases, temporal proximity alone may be "sufficient evidence of causality to establish a prima facie case," provided that the proximity is "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (citing cases indicating three- and four-month periods are insufficient to establish causality). On balance, since the time period here is so brief, this case presents a close question. The Court thus assumes for the purposes of this motion, without deciding, that Samuels can establish a prima facie case.

Samuels's retaliation claim founder on the third step of the *McDonnell Douglas* analysis. Compass has articulated a legitimate, nonretaliatory reason for firing Samuels: his departure on July 9 in violation of his supervisors' instructions. Thus, the burden shifts to Samuels to point to a conflict in substantial evidence regarding but-for causation. See *Hernandez*, 670 F.3d at 660. He has not done so. The evidence of temporal proximity does not aid Samuels here. Even when temporal proximity suffices to establishe a prima facie case of retaliation, the Fifth Circuit "affirmatively reject[s] the notion that temporal proximity

ORDER – PAGE 13

standing alone can be sufficient proof of but for causation." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007). In fact, Samuels admits facts that support the conclusion that Compass's articulated rationales indeed account for Samuels's firing. Specifically, he acknowledged that he knew he was required to work certain hours and that he could be discharged if he failed to do so. Samuels Dep. 37-38 (Def.'s App 11-12). Moreover, he conceded that he knew he could be discharged for not following his supervisors' instructions and that he failed to follow those instructions. *Id.* 37-38, 65 (Def.'s App. 11-12, 28). Even if he can establish a prima facie case of retaliation, then, Samuels cannot point to a conflict of evidence regarding but-for causation. Compass is thus entitled to summary judgment as to Samuels's retaliation claim.

### CONCLUSION

There is no genuine issue as to any material fact sufficient to allow any of Samuels's claims to survive summary judgment. The Court accordingly grants Compass's motion.

Signed November 13, 2012.

_____
David C. Godbey
United States District Judge